# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>COLE THOMAS SALAZAR (1),<br>VALERIE LYNN ADDISON (2),<br><br>Defendants. | Case No.  **21-MJ-4726**<br><br>COMPLAINT FOR VIOLATION OF:<br>Title 21, U.S.C. §§ 841(a)(1) and 841(b)(1)(C) – Distribution of Fentanyl Resulting in Death (Felony); Title 21, U.S.C. §§ 841(a)(1) and 841(b)(1)(C) – Possession with Intent to Distribute Fentanyl (Felony), Title 18, U.S.C., Sec. 2 – Aiding and Abetting; Title 21, U.S.C. §§ 841(a)(1) and 841(b)(1)(C) – Possession with Intent to Distribute Heroin (Felony), Title 18, U.S.C., Sec. 2 – Aiding and Abetting; ; Title 21, U.S.C. §§ 841(a)(1) and 841(b)(1)(C) – Possession with Intent to Distribute Methamphetamine (Felony), Title 18, U.S.C., Sec. 2 – Aiding and Abetting; Title 21, U.S.C. §§ 841(a)(1) and 846 – Conspiracy to Distribute Fentanyl (Felony) |

The undersigned complainant being duly sworn states:

## COUNT ONE

On or about November 3, 2020, within the Southern District of California, defendant COLE THOMAS SALAZAR did knowingly and intentionally distribute a quantity of a mixture and substance containing a detectable amount of N-Phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (commonly known as fentanyl), a Schedule II Controlled Substance, which resulted in the death of another person, to

wit, S.E.F.; in violation of Title 21, United States Code, Sections 841(a)(l) and 841(b)(1)(C).

## COUNT TWO

On or about January 13, 2021, within the Southern District of California, defendants COLE THOMAS SALAZAR and VALERIE LYNN ADDISON did knowingly and intentionally possess, with the intent to distribute, a mixture or substance containing a detectable amount of N-Phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (commonly known as fentanyl), a Schedule II Controlled Substance; in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code, Section 2.

## COUNT THREE

On or about January 13, 2021, within the Southern District of California, defendants COLE THOMAS SALAZAR and VALERIE LYNN ADDISON did knowingly and intentionally possess, with the intent to distribute, a mixture or substance containing a detectable amount of heroin, a Schedule I Controlled Substance in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code, Section 2.

## COUNT FOUR

On or about January 13, 2021, within the Southern District of California, defendants COLE THOMAS SALAZAR and VALERIE LYNN ADDISON did knowingly and intentionally possess, with the intent to distribute, 50 grams and more, to wit: approximately 60 grams of methamphetamine (actual), a Schedule I Controlled Substance; in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code, Section 2.

1

## COUNT FIVE

2          Beginning on a date unknown and ending on or about January 13, 2021, within
3   the Southern District of California, defendants COLE THOMAS SALAZAR and
4   VALERIE LYNN ADDISON did knowingly and intentionally conspire together and
5   with each other and with other persons known and unknown to distribute a quantity
6   of a mixture and substance containing a detectable amount of N-Phenyl-N-[1-(2-
7   phenylethyl)-4-piperidinyl] propanamide (commonly known as fentanyl), a
8   Schedule II Controlled Substance; in violation of Title 21, United States Code,
9   Section 841(a)(1) and 846.

10

11         And the complainant states that this complaint is based on the attached
12   Probable Cause Statement, which is incorporated herein by reference.

13

14                              Lisa Amman
                                Task Force Officer
15                              Drug Enforcement Administration

16

17   Attested to by the applicant in accordance with the requirements of Fed. R. Crim.
18   P. 4.1 by telephone on this 13th day of December, 2021.

19

20                              HONORABLE BARBARA L. MAJOR
                                UNITED STATES MAGISTRATE JUDGE
21

22

23

24

25

26

27

3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**PROBABLE CAUSE STATEMENT**

I, Task Force Officer (TFO) Lisa Amman, of the Drug Enforcement Administration (DEA), declare under penalty of perjury that the following is true and correct to the best of my knowledge and belief.

During the course of my duties, I have learned the following information from my personal participation in this investigation and having read the reports prepared by other law enforcement officers. The following does not contain all of the information known to myself or other federal agents and state and local officers regarding this investigation, but does contain those facts believed to be necessary to establish requisite probable cause.

On November 7, 2020, at approximately 1:45 p.m., San Diego County Sheriff's Department (SDSD) Deputies responded to a report of an unresponsive female inside of her apartment in Vista, California. Deputies arrived at the residence and a few minutes later pronounced S.E.F. (a twenty-four year old woman) deceased. Deputies interviewed the reporting party who stated he was S.E.F.'s neighbor and that he last saw S.E.F. on November 3, 2020. The reporting party was contacted by S.E.F.'s father on November 7, 2020, who asked the reporting party to check on S.E.F., which resulted in the reporting party discovering S.E.F. unresponsive in her bed and calling 9-1-1.

In the apartment, SDSD Deputies found an assortment of prescribed medications, numerous alcohol containers, a bong, burnt foil, and two small clear plastic baggies with nothing inside of them. The burnt foil and a baggie presumptively tested positive for the presence of fentanyl. The San Diego County Medical Examiner's Office (MEO) conducted their own investigation and performed an autopsy on November 8, 2020. The MEO determined S.E.F. died as the result of the toxic effects of fentanyl and alprazolam.

4

1       Drug Enforcement Administration (DEA) San Diego Field Division (SDFD),

2  San Diego County Integrated Narcotics Task Force (NTF) Team 10 began an

3  investigation into the death of S.E.F. to determine from whom S.E.F. procured the

4  fatal dose of drugs. Based on a review of S.E.F.'s cellular phone, investigators

5  learned that S.E.F. initially communicated with SALAZAR in early August 2020 via

6  the "LetGo" app, now owned by "OfferUp." S.E.F. communicated by email with

7  "dabbintartar@gmail.com" (believed to be utilized by SALAZAR) using subject

8  line "Roofing Tar." Drug dealers often use coded language, such as "roofing tar"

9  meaning black tar heroin, in an attempt to avoid scrutiny by law enforcement.

10      Team 10 investigators obtained a forensic download of S.E.F.'s cell phone. In

11  reviewing S.E.F.'s phone download, Team 10 investigators reviewed subsequent

12  text communications between S.E.F. and SALAZAR. SALAZAR was using

13  "TextNow" for his phone service with a telephone number ending in digits 0463

14  from at least October 5, 2020 through November 3, 2020. Based on the continuing

15  messages between S.E.F. and SALAZAR, it appears as though SALAZAR was

16  supplying fentanyl and/or heroin to S.E.F. throughout that time period, until the final

17  transaction between them on November 3, 2020, which resulted in S.E.F.'s death.

18      In particular, S.E.F. last communicated with SALAZAR on November 3,

19  2020 by text message. During a series of messages on November 3, 2020,

20  SALAZAR asked S.E.F. if she knew anyone with money because he had "real blue

21  roxi 30s." "Roxi 30s," also known as Roxicodone 30 mg tablets, or oxycodone 30

22  mg tablets, are commonly abused Schedule II opioid pharmaceutical pills, and

23  counterfeits of these pills often contain fentanyl instead of oxycodone and are

24  referred to as "blues," "Roxies," "M30s," etc. Later in the conversation, S.E.F.

25  indicated to SALAZAR that she was dope-sick and needed drugs. SALAZAR asked

26  S.E.F., "u are talking the tickets to Fenway park the Fairy dust." S.E.F. replied, "Yes

27

I'd much prefer Fenway park  But I'm desperate so." Investigators believe that "Fenway park" and "fairy dust" are references to fentanyl powder. S.E.F. and SALAZAR discussed a location to meet in the Rancho Bernardo neighborhood of San Diego. SALAZAR followed up by sending two "selfie" photographs of himself to S.E.F.

That same day, S.E.F. continued to send text messages to SALAZAR and confirmed they were meeting up at a parking lot in Rancho Bernardo. At approximately 10:55 a.m., S.E.F. messaged SALAZAR, "You there?" At approximately 11:11 a.m., S.E.F. messaged SALAZAR, "If u ever free and in north county come thru and kick it with me at my place." Based on these messages, investigators believe that SALAZAR and S.E.F. met on November 3, 2020 between 10:55 a.m. and 11:11 a.m. to consummate the drug transaction. S.E.F. sent her last message to SALAZAR at 11:27 a.m.

On January 10, 2021, an investigator acting in an undercover (UC) capacity and utilizing the decedent's (S.E.F.) cell phone, sent a text message to SALAZAR requesting "tickets to Fenway." Over the next two days, the UC and SALAZAR exchanged text messages about meeting for the UC to purchase fentanyl and heroin from SALAZAR.

On January 13, 2021, the UC messaged SALAZAR asking if he was available and had the "confetti," a common slang term for fentanyl. SALAZAR responded "Yes," and requested the UC meet him downtown to purchase the drugs. The UC messaged SALAZAR that she parked her car.  Law enforcement observed SALAZAR walking on foot with a female (later identified as Valerie Lynn ADDISON) towards the UC's vehicle. As SALAZAR and ADDISON approached, law enforcement contacted them. SALAZAR confirmed his identity to law enforcement. A search of SALAZAR's person produced approximately 2.6 net

grams of black tar heroin, a black substance containing approximately .48 grams of heroin, and a white powdery substance containing approximately .29 grams of fentanyl.

ADDISON told investigators that she was SALAZAR's girlfriend, and that they were walking so that SALAZAR could sell drugs. ADDISON explained that they were staying in a hotel in her name because SALAZAR had a warrant. ADDISON told investigators that she was to receive the proceeds from SALAZAR's drug transaction. ADDISON gave law enforcement verbal and written consent to search the hotel room.

Investigators performed a consensual search of the hotel room. Inside the hotel room investigators found numerous controlled substances, including the following:

- Three large baggies of crystalline substance, containing approximately 60 grams of methamphetamine (actual), located in the top drawer of a night stand on the left side of the bed next to used foils and two digital scales;
- One small chunk of a white powdery substance, which presumptively tested positive for fentanyl, on top of a functional digital scale located in the top drawer of a night stand on the left side of the bed;
- A white powdery substance inside a piece of aluminum foil packaged within a folded white piece of paper on the TV stand, containing approximately 0.9 grams of cocaine hydrochloride; and
- "Pay Owe" labels and price list for drugs.

Items in both SALAZAR and ADDISON's names, along with male and female type clothing were found within the room.

During a post-Miranda interview, ADDISON admitted she was renting the room at the hotel in her name because SALAZAR had an active felony warrant. ADDISON said SALAZAR was going to sell the drugs he was in possession of to a female friend. ADDISON said SALAZAR was supposed to give her the money from the drug sales, and she was going to deposit the money into her bank account and use the money to continue renting the hotel room.

ADDISON said she met SALAZAR a few years ago and he was her drug dealer. ADDISON said she and SALAZAR have been in a dating relationship for a few months.

As a result of the foregoing, ADDISON and SALAZAR were booked into the custody of the San Diego County Sheriff's Department.

At the time of arrest, SALAZAR had a purple Galaxy S9+ cell phone in his hand. ADDISON claimed it was her phone that she allowed SALAZAR to use for the past three days. The "TextNow" app on the phone showed the associated phone number ending in digits 0463, which is the phone number the UC used to communicate with SALAZAR, and the number S.E.F. contacted to purchase drugs before her death. Over 15 messages on the phone related to the coordination with customers to sell drugs to them.

Investigators found numerous photographs of evidentiary value saved in this phone including the following: a photograph of a "Ziploc" style baggie containing a white powdery substance; photographs of foil with burnt residue and photographs of pills; photographs of ADDISON and SALAZAR together; screenshots of text messages regarding drug sales and directing the buyer to send payment through Venmo; and a photograph of a receipt from a hotel in ADDISON's name for two guests for the night of October 28, 2020.

During a post-Miranda interview with SALAZAR, SALAZAR said the drugs in the hotel room belonged to him. SALAZAR said ADDISON was renting the room, and they were both staying in the room. SALAZAR stated he had been using the purple Samsung Galaxy S9+ cell phone found in his possession for weeks. SALAZAR said he was walking to sell drugs to his friend when he was contacted and arrested by police. In regards to the investigation of the death of S.E.F., SALAZAR denied selling S.E.F. fentanyl.